FILED & JUDGMENT ENTERED
Steven T. Salata

Feb 11 2015

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_Laura T Beyer_
Laura T. Beyer
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Statesville Division**

| | |
|---|---|
| In re: | Case Number:  14-50486-LTB-11 |
| John Luther Rufty, Jr., | Chapter 11 |
| Debtor. | |

**ORDER GRANTING TRUSTEE'S MOTION FOR ORDER TO SHOW CAUSE;
DENYING DEBTOR'S MOTION TO AMEND EXEMPTIONS; AND
FINDING THE DEBTOR IN CONTEMPT OF DECEMBER 17, 2014 ORDER**

This matter came on for hearing on January 9, 2015 (the "Hearing") on the *Trustee's Motion for Order to Show Cause* (the "Show Cause Motion") (D.E. 90) filed in connection with the Court's December 17, 2014 *Order Sustaining Trustee's Objection to Exemptions* (the "Exemption Order") by A. Cotten Wright, the Chapter 11 Trustee (the "Trustee") in the above-referenced case, through counsel, and the *Response of Debtor to Trustee's Motion for Order to Show Cause; Motion to Amend Exemptions; Motion to Reconsider Order Sustaining Objection to Exemptions* (the "Response and Motion") (D.E. 94), filed by John Luther Rufty, Jr. (the "Debtor"), through counsel.  Present at the hearing were the A. Cotten Wright, appearing on her own behalf, James H. Henderson, counsel for the Debtor, and Robert P. Laney, counsel for Kim Evans.  The Court, having reviewed the Show Cause Motion, the Response and Motion, and the

record in this case, and having considered the testimony of the Debtor and arguments of counsel,

finds and concludes as follows:

## FACTUAL BACKGROUND

1.      The Debtor filed a petition for relief pursuant to chapter 11 of the Bankruptcy

Code on July 10, 2014 (the "Petition Date").  On August 6, 2014, the Court entered a *Consent*

*Order Appointing Chapter 11 Trustee and Setting Bond*, pursuant to which, the Trustee was

appointed.  D.E. 14.

2.      The Debtor once owned real property located at 2760 Tate Boulevard, Hickory,

NC, which is leased to the Debtor's business, Carolina Amputee Care ("CAC").[1]  On February 3,

2012, the Debtor transferred his interest in the Tate Boulevard property and another property in

Blowing Rock, North Carolina, to R&R Real Estate Ventures, LLC ("R&R"), an entity that he

owns jointly with his mother, Faye Rufty.[2]

3.      Following a levy on his personal bank account by the Internal Revenue Service,

the Debtor began using a bank account held in the name of R&R at Peoples Bank (the "R&R

Account") for his personal income and expenses.

4.      In lieu of collecting a salary and incurring payroll taxes, the Debtor's practice is

to take $8,000.00 per month in rent from CAC.  According to the Debtor, that monthly rent

reflects his only income and is used to pay his child support, rent on a house on Lake Norman,[3]

and personal expenses.  Pre-petition, the Debtor deposited CAC's rent checks in the R&R

Account.

5.      The R&R Account was not listed on the Debtor's Schedule B-2 relative to bank

---

[1]      The Debtor owns 100% of the stock in CAC.
[2]      Pending before the Court is an adversary proceeding brought by the Trustee against R&R and its members relative to the Debtor's transfers of interests in real property, A.P. No. 14-5035.
[3]      The Debtor rents property at 150 Pentland Court, Mooresville, NC (the "Lake Norman Home").

accounts.  In fact, the Debtor did not disclose any bank accounts in Schedule B-2.  Nevertheless,

the Debtor claimed an exemption in cash on hand and bank accounts in his Schedule C in the

amount of $2,387.52.

6.      On October 2, 2014, the Trustee filed her *Trustee's Objection to Exemptions* (the

"Objection") objecting to, among other things, the Debtor's claim of exemptions pursuant to

N.C. Gen. Stat. § 1-362  in cash on hand and in bank accounts in the amount of $2,487.52.  D.E.

37.

7.      The Court conducted a hearing on the Objection on December 5, 2014, and upon

considering the arguments of counsel, ordered that the Debtor turn over to the bankruptcy estate

the Petition Date balance in the R&R Account, which was $15,736.04 (the "Funds).

8.      On December 17, 2014, the Exemptions Order was entered pursuant to which the

Debtor was ordered to turn over the Funds within ten (10) days.  D.E. 88.

9.      On December 30, 2014, the Trustee filed the Show Cause Motion, which was

followed by the Response and Motion on January 8, 2015.

## DISCUSSION

### A.      The Debtor's Motion to Amend Exemptions.

10.      In the Response and Motion, the Debtor argued that he should be permitted to

exempt the Funds pursuant to N.C. Gen. Stat. § 1-362, citing for support *Jacobi-Lewis Co., Inc.

v. Charco*, 121 N.C. App. 500, 466 S.E.2d 338 (N.C. App. 1996).   North Carolina statutes

provide that a debtor may exempt "earnings of the debtor for his personal services, at any time

within 60 days next preceding the order, . . . when it appears, by the debtor's affidavit or

otherwise, that these earnings are necessary for the use of a family supported wholly or partly by

his labor."  § 1-362.  In interpreting § 1-362, the *Jacobi-Lewis* court held that rents are analogous

3

to "earnings of the debtor for his personal services" as that term is used in § 1-362. 121 N.C. App. at 501; 466 S.E.2d at 339. The *Jacobi-Lewis* decision was not appealed, and the North Carolina Supreme Court has not had occasion to consider the question of whether rents fall under the umbrella of exemptions provided in § 1-362.

11. Two of this Court's sister bankruptcy courts have declined to follow *Jacobi-Lewis*. In *In re Dillon*, 2005 WL 1629923 (Bankr. M.D.N.C. July 8, 2005), Judge Stocks noted that rents are based on a superior right of possession rather than on any intellectual or manual labor or service. 2005 WL 1629923 at *3. The *Dillon* opinion criticized the *Jacobi-Lewis* decision to regard future rents as earnings "without any supporting authority." *Id*. Further, treating rents as exemptible under § 1-362 results in an incongruity in the law in that a judgment creditor could execute on the debtor's real property, but the debtor could shelter the rent derived from that same property from execution. *Id* at *2, n.2. For these reasons, Judge Stocks determined that the North Carolina Supreme Court would not adopt the holding in *Jacobi-Lewis*. *Id*. at *3.

12. Likewise, citing *Dillon* and discussing *Jacobi-Lewis*, the court in *In re Adams*, 506 B.R. 688 (Bankr. E.D.N.C. 2014) (Humrickhouse, J.) held that the debtor's mobile home rental receipts were not exemptible under § 1-362. 506 B.R. at 693. The *Adams* court found "no sound basis upon which to conclude" that North Carolina courts would apply the exemption for "earnings for personal services" to rents. *Id*.

13. The Court concurs with the explanation in *Dillon* that *Jacobi-Lewis* strays too far from the text of § 1-362 in that rental income does not reflect earnings for personal services. 2005 WL 1629923 at *2. The Court agrees with the *Dillon* and *Adams* courts that the North Carolina Supreme Court would not approve the holding in *Jacobi-Lewis*, and, therefore, joins

4

those courts in declining to follow that decision.

14.     The facts of the Debtor's case do not satisfy the elements of § 1-362.  The Debtor testified that he chose to classify monthly disbursements from CAC as rent rather than payroll. The Debtor is stuck with that label.  Given that the Debtor has designated payments from CAC as "rent" so as to avoid payroll taxes, the Court is not inclined to regard those monthly withdrawals as "earnings" so that the Funds may be exempted.  The Court is also mindful that the Debtor elected to deposit his rental income in the R&R Account in order to avoid further levy by the IRS.  Injustice would result if these facts were ignored.

15.     Moreover, it appears that the Debtor does not use the money he withdraws from CAC to support his family.  The Debtor testified that he pays $4,000.00 per month in rent for the Lake Norman House so that he will have a place to live.  The Debtor also testified that he pays $2,538.11 per month in child support despite the fact that his monthly child support obligation is approximately $6,000.00.  The Debtor takes a discount in his child support payments because he has requested that the payment amount be modified; however, no such modification has been ordered. The Court agrees with the Trustee that the Debtor appears to use his monthly rental income to support his lifestyle choice, not his family.

16.     For these reasons, the Court concludes that the Debtor cannot satisfy the elements of § 1-362 so as to exempt the Funds.  The Debtor's motion to amend his exemptions with respect to the Funds is denied as is the Debtor's motion to reconsider the Exemptions Order.

**B.     The Trustee's Show Cause Motion.**

17.     The Debtor appeared and testified at the Hearing in order to show cause as to why he had not turned over the Funds.  Thus, the Show Cause Motion has been satisfied in part.

18.     Having considered the Debtor's testimony, the Court finds that the Debtor is in

contempt of the Exemptions Order.  He may purge that contempt by turning over the Funds to the Trustee.

19.     The Debtor argued that he has a defense to contempt in that it is impossible to comply with the Exemptions Order because he does not have enough money to turn over the Funds.  The Debtor's impossibility argument is overcome by the Trustee's willingness to accept payments toward turnover of the Funds.  To that end, the Court authorizes the Trustee to negotiate payment terms with the Debtor.  If those negotiations are unsuccessful, the Court will conduct a further hearing to determine a payment structure for the Debtor that will enable him to purge his contempt.

IT IS, THEREFORE, ORDERED that:

1)     The Debtor's motion to reconsider the Exemptions Order is DENIED;

2)     The Debtor's motion to amend his exemptions to claim the Funds as exempt pursuant to § 1-362 is DENIED;

3)     The Debtor is in civil contempt of the Court's December 17, 2014 Exemptions Order;

4)     The Debtor may purge his contempt by turning over to the Trustee the Funds reflecting the balance in the R&R Account as of the Petition Date, $15,736.04; and

5)     The Trustee is authorized to negotiate payment terms with the Debtor relative to turnover of the Funds; provided, however, that if such negotiations are unsuccessful, the Court will determine a payment structure for the Debtor.

This Order has been signed                                        United States Bankruptcy Court
electronically. The Judge's
signature and Court's seal
appear at the top of the Order.

6